SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GREG S. LABATE, Cal. Bar No. 149918
glabate@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:    714.513.5100
Facsimile:     714.513.5130

HILARY A. HABIB, Cal. Bar No. 293431
333 South Hope Street, 43rd Floor
hhabib@sheppardmullin.com
Los Angeles, California  90071-1422
Telephone:    213.620.1780
Facsimile:     213.620.1398

Attorneys for Defendants MARRIOTT INTERNATIONAL, INC.
*erroneously sued as* MARRIOTT INTERNATIONAL,
MARRIOTT HOTEL SERVICES, INC.,
AND COURTYARD MANAGEMENT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCELI YAMIDO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COURTYARD MANAGEMENT CORPORATION dba THE CLANCY AUTOGRAPH COLLECTION; MARRIOTT INTERNATIONAL; MARRIOTT HOTEL SERVICES, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:22-cv-7023<br><br>San Francisco Superior Court Case No. CGC-22-601366<br><br>State Court Complaint Filed: August 19, 2022<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, AND 1446**<br><br>**(CLASS ACTION FAIRNESS ACT)** |

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ................................................................................................................. 1

II.  STATUS OF PLEADINGS ........................................................................................ 2

III. JURISDICTION PURSUANT TO CAFA IS SATISFIED ....................................... 3

    A.   Minimum Diversity Of Citizenship Exists Here ............................................ 4

    B.   The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA ............................................................................................................. 6

        a.   Waiting Time Penalties ....................................................................... 9

        b.   Wage Statement Penalties ................................................................ 10

        c.   Amount In Controversy For Plaintiff's Other Claims ...................... 10

        d.   Amount In Controversy For Attorneys' Fees ................................... 10

    C.   No CAFA Exceptions Apply ....................................................................... 12

IV.  TIMELINESS OF REMOVAL ............................................................................... 12

V.   NOTICE TO PLAINTIFF AND STATE COURT ................................................. 13

SMRH:4896-0926-4957.2                                                    NOTICE OF REMOVAL OF ACTION

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA:

3  PLEASE TAKE NOTICE that Defendants COURTYARD MANAGEMENT
4  CORPORATION ("Courtyard"), MARRIOTT INTERNATIONAL, INC. (*erroneously sued as*
5  MARRIOTT INTERNATIONAL) ("MII"),[1] AND MARRIOTT HOTEL SERVICES, INC.
6  ("MHS") (collectively, "Defendants") hereby remove the matter filed by Plaintiff Arceli Yamido
7  ("Plaintiff") in the case entitled <u>Arceli Yamido v. Courtyard Management Corporation et al.</u>,
8  pending in the Superior Court of the State of California in and for the County of San Francisco,
9  Case No. CGC-22-601366, to the United States District Court for the Northern District of
10 California, pursuant to 28 U.S.C. Sections 1332(d), 1441(b), and 1446.

11 Removal is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections
12 1332(d), 1441(b) and 1446, on the following grounds:

## I.  STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

15 1.  CAFA was enacted on February 18, 2005.  In relevant part, CAFA grants federal
16 district courts original jurisdiction over civil class action lawsuits filed under federal or state law
17 in which any member of a class of plaintiffs is a citizen of a state different from any defendant,
18 and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

19 2.  This Court has jurisdiction over this case under CAFA, 28 U.S.C. Section 1332(d),
20 and this case may be removed pursuant to the provisions of 28 U.S.C. Section 1441(a), in that it is
21 a civil class action wherein: (1) the proposed class contains at least 100 members (Complaint, ¶ 7);
22 (2) the primary defendants are not a state, state official or other governmental entity; (3) the total
23 amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity
24 between at least one class member and one defendant.  Each of these conditions was satisfied at
25 the time this action was initiated and now at the time of removal.

---

[1] MII was not Plaintiff's employer.  Accordingly, the calculations herein are not based on data records of individuals employed by this entity.  Defendants further reserve their right to challenge whether certain properties are in scope of this lawsuit.

3.      Further, while there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. section 1332(d)(3)-(5), none of the exceptions is applicable here, as demonstrated hereafter.

4.      Venue is proper in this Court pursuant to 28 U.S.C. Sections 84(c) and 1391.

5.      As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**II.     STATUS OF PLEADINGS**

6.      On or about August 19, 2022, Plaintiff filed a complaint in the Superior Court of the State of California in and for the County of San Francisco, entitled <u>Arceli Yamido v. Courtyard Management Corporation et al.</u>, San Francisco County Superior Court Case No. CGC-22-601366 ("Complaint").

7.      A copy of the Complaint and related documents were served on Defendants on October 10, 2022. True and correct copies of the Complaint, Civil Case Cover Sheet, Summons, and Notice of Case Management Conference served on Defendants are attached hereto, collectively, as **Exhibits A to D**. The Proof of Service of Summons is attached hereto as **Exhibit E.**

8.      Prior to filing this Notice of Removal, Defendants filed their Answer to the Complaint in San Francisco County Superior Court and served their Answer on Plaintiff. Attached hereto as **Exhibit F** is a true and correct copy of Defendants' Answer to the Complaint.

9.      Plaintiff asserts in the Complaint that Defendants employed her and other persons in the capacity of non-exempt positions throughout the state of California. <u>See</u> Complaint, ¶¶ 6, 10.

10.     This action has been filed as a California class action under California Code of Civil Procedure Section 382. <u>See</u> Complaint, ¶ 10. California Code of Civil Procedure Section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

11.     The Complaint alleges that the "members of the class exceed 100 persons." <u>See</u> Complaint, ¶ 7. On the basis of its own investigation, MHS and Courtyard determined there are

more than 100 current and former non-exempt employees who worked for them in California during the four-year period prior to the filing of the Complaint.  Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the initiation of this civil action.  See Complaint, ¶ 7.

12. Plaintiff's Complaint asserts five (5) causes of action: (1) failure to pay wages including overtime; (2) failure to pay timely final wages; (3) failure to provide accurate, itemized wage statements; (4) failure to indemnify necessary business expenses; and (5) violation of the unfair competition law.

### III.  JURISDICTION PURSUANT TO CAFA IS SATISFIED

13. Pursuant to Section 4 of CAFA, 28 U.S.C. Section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal.  Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."); Arias v. Residence Inn by Marriott, 936 F.3d 920, 922 (9th Cir. 2019) (holding that "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements").  Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists."  Dart Cherokee, 135 S. Ct. at 554.  Evidence is required "only when the plaintiff contests, or the court questions, the defendant's allegation."  Id.  (emphasis added).

14. The United States Supreme Court in Dart Cherokee held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  Id.  Following Dart Cherokee, the Ninth Circuit has directed the district courts to

-3-

"interpret CAFA's provisions under section 1332 broadly in favor of removal . . . ." Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively"). In Bridewell-Sledge v. Blue Cross, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under Dart Cherokee, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" Moppin v. Los Robles Reg'l Med. Ctr., 2015 WL 5618872, at *2 (C.D. Cal. Sept. 24, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

### A.    Minimum Diversity Of Citizenship Exists Here

15.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. See 28 U.S.C. § 1332(d).

16.    Plaintiff is a resident and citizen of California. See Complaint ¶ 21; Declaration of Tiffany Schafer ("Schafer Decl."), ¶ 8. At all times set forth in the Complaint, Plaintiff alleges that she worked for Defendants in California. See Complaint, ¶ 21. Although no evidence of domicile is required at the notice of removal stage (Dart Cherokee, 135 S. Ct. at 554), "[p]roof of residence in a state is usually thought prima facie evidence of domicile." Bradley Min. Co. v. Boice, 194 F.2d 80, 84 (9th Cir. 1951); see also Anderson v. Watt, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary . . . ."); Barborsa v. Transp. Drivers, Inc., 2015 WL 9272828, at *2 (C.D. Cal. Dec. 18, 2015) ("[A] person's residence is prima facie evidence of [their] place of domicile for purposes of diversity jurisdiction[.]") (quotations omitted). Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." Mondragon v. Capital One Auto Fin., 736 F.3d 880, 885 (9th Cir. 2013).

17. Where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) ("[T]he determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes[.]").

18. Here, Plaintiff worked and lives in California. See Complaint, ¶ 21; Schafer Decl., ¶ 8. Accordingly, Plaintiff is a citizen of California for purposes of determining diversity. See 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which they are domiciled); State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994) (residence is prima facie evidence of domicile for purposes of determining citizenship).

19. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1).

20. The U.S. Supreme Court has clarified the definition of a corporation's "principal place of business." In Hertz Corp. v. Friend, 130 S. Ct. 1181, 1192 (2010), the United States Supreme Court concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination." Id.

21. Under the foregoing standard, the facts here clearly establish that Defendants are now at the time of this removal, and were at the institution of this civil action, citizens of Delaware and Maryland for purposes of removal. Defendants were incorporated in the State of Delaware, and maintain their respective corporate headquarters in Bethesda, Maryland. See Declaration of Andrew Wright ("Wright Decl."), ¶¶ 2-3. It is Bethesda, Maryland where each of Defendants'

respective high-level officers direct, control, and coordinate each Defendant's activities. See id., ¶ 3. Defendants' executive operations are managed from their corporate headquarters. Id. Accordingly, each Defendant's principal place of business is in Maryland. Id.; 28 U.S.C. § 1332(c)(1).

22. In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Defendants are citizens of the States of Delaware and Maryland, which are the state of incorporation and the principal place of business for each Defendant. Thus, the minimum diversity requirement under CAFA is satisfied.

23. Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332. Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); Soliman v. Philip Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 50, does not deprive this Court of jurisdiction.

**B.     The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA**

24. Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

25. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." Dart Cherokee, 135 S. Ct. at 554. Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal. Id. A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by "provid[ing] only a short and plain statement of the grounds for removal." Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1225 (9th Cir. 2019); see also Dart Cherokee, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a

plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").  Here, Defendants allege there is more than $5,000,000 in controversy.

26. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds five million dollars ($5,000,000.00).  See 28 U.S.C. § 1332(d).  By demonstrating that the actual amount in controversy exceeds the threshold, Defendants do not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will certify any class or recover anything.

27. "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." Henry v. Cent. Freight Lines, Inc., 692 F. App'x 806, 807 (9th Cir. 2017).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns., Inc., 627 F.3d 395, 400 (9th Cir. 2010); Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe . . . .") (aff'd by 631 F.3d 1010 (9th Cir. 2011)); Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *3 (E.D. Cal. Apr. 30, 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

28. In the Ninth Circuit, the amount in controversy is determined "at the time of removal." Kroske v. US Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997).  In Chavez v. JPMorgan Chase, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." Id. at 417.  Chavez held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal

and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." Id. at 414-15.  The Ninth Circuit again affirmed these principles in Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785 (9th Cir. 2018).

29. Defendants provide the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction.  Defendants make no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.  Nor do Defendants waive their right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

30. Plaintiff's Complaint defines the putative class ("Proposed Putative Class") as: "All persons who have been employed by Defendants as Non-Exempt Employees or equivalent positions, however titled, in the state of California within four (4) years from the filing of the Complaint in this action until its resolution[.]" See Complaint, ¶ 10.

31. MHS and Courtyard independently determined based on their own business records that the Plaintiff's Proposed Putative Class is comprised of at least 3,835 non-exempt employees who worked for MHS or Courtyard.  See Schafer Decl., ¶ 3.

32. MHS and Courtyard independently determined based on their own business records that during the preceding four years prior to the filing of this action, i.e., August 19, 2018 to present, MHS and Courtyard paid Proposed Putative Class members at least minimum wage, which as of January 1, 2018 was at least $11.00 per hour in California, and higher if a local minimum wage ordinance applied.  Schafer Decl., ¶ 6.  As of January 1, 2019, it was at least $12.00 per hour in California, and higher if a local minimum wage ordinance applied.  Many of MHS and Courtyard's non-exempt hourly employees from August 19, 2018 to present were paid an hourly base wage much higher than $12.00 per hour.  Id.

33. MHS and Courtyard independently determined based on their own business records that between August 19, 2019 and present, at least 1,620 members of the Proposed Putative Class separated from employment.  Id., ¶ 4.

-8-

a. __Waiting Time Penalties__

34. Under Cal. Labor Code Section 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

35. Plaintiff alleges that Defendants willfully failed to pay wages to former employees in accordance with Cal. Labor Code Sections 201 and 202. Pursuant to Cal. Labor Code Section 203, Plaintiff seeks waiting time penalties at the employees' regular rate of pay, for a penalty of up to 30 days' wages. See Complaint, ¶¶ 50-54.

36. The statute of limitations for a claim under Cal. Labor Code Section 203 is three years. Pineda v. Bank of Am. N.A., 50 Cal. 4th 1389, 1398 (2010). There were at least 1,620 Proposed Putative Class members whose employment with Courtyard or MHS terminated between August 19, 2019 and present. See Schafer Decl., ¶ 4.

37. Therefore, MHS and Courtyard independently determined based on their own business records and on the allegations contained within Plaintiff's Complaint that Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) in the amount of at least **$4,665,600.00** accrued as of present ($12.00 average lowest rate of pay * 8 hours per day * 30 days * 1,620 former alleged Proposed Putative Class members).

38. Defendants are and would be justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegations that "Defendants willfully failed and refused, and continued to willfully fail and refuse, to pay Plaintiff and Class Members their wages, earned and unpaid, either at the time of discharge or within seventy-two (72) hours of their voluntarily laving Defendants' employ." Complaint, ¶ 53; see also Coleman, 730 F. Supp. 2d at 1149 ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); Sanchez v. Russell Sigler, Inc., 2015 WL 12765359, *6 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of

meal and rest periods."); Mortley v. Express Pipe & Supply Co., 2018 WL 708115, at *4 (C.D. Cal. Feb. 5, 2018) (100% violation rate proper when allegations are "routine and systematic violations").

### b. Wage Statement Penalties

Plaintiff alleges that Defendants knowingly and intentionally failed to provide to Plaintiff and Proposed Putative Class members accurate written wage statements in violation of Labor Code section 226(a). Complaint, ¶¶ 55-63. Plaintiff seeks penalties of $50 for each Proposed Putative Class member's first inaccurate wage statement, and $100 for each subsequent inaccurate wage statement. Id., ¶ 63. No less than 133,875 wage statements were issued to Proposed Putative Class members who were employed by Courtyard or MHS from August 19, 2021 to present. Schafer Decl., ¶ 5. Should Plaintiff prevail on this claim on behalf of herself and putative class members, and conservatively assuming only a $50 penalty per wage statement, alleged damages would amount to approximately **$6,693,750** ($50 per wage statement x 133,875 wage statements).

### c. Amount In Controversy For Plaintiff's Other Claims

39. In addition to the claims identified above, Plaintiff also alleges that she and the Proposed Putative Class members were not provided all minimum wages and overtime and were not reimbursed for business expenses in accordance with California law. See Complaint, ¶¶ 38-49, 64-68.

40. Cal. Labor Code Section 1194 states that an employee receiving less than the legal minimum wage is entitled the recover the amount owed in a civil action.

41. Thus, Plaintiff's claim for failure to provide minimum wages further increases the amount in controversy beyond the jurisdictional minimum of $5,000,000.

### d. Amount In Controversy For Attorneys' Fees

42. Plaintiff also alleges an entitlement to attorneys' fees. See Complaint, Prayer. Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy. Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or

-10-

discretionary language, such fees may be included in the amount in controversy."). In <u>Fritsch v. Swift Transp. Co. of Ariz., LLC</u>, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.

43. Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. <u>Garibay v. Archstone Communities LLC</u>, 539 F. App'x 763, 764 (9th Cir. 2013); <u>Rodriguez v. Cleansource, Inc.</u>, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014); <u>Marshall v. G2 Secure Staff, LLC</u>, 2014 WL 3506608 (C.D. Cal. July 14, 2014); <u>Jasso v. Money Mart Exp., Inc.</u>, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012); <u>Ramos v. Schenker, Inc.</u>, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018); <u>Ramirez v. Benihana Nat'l Corp.</u>, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019); <u>see also</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Thus, an additional minimum amount of at least **$ 2,839,837.50** must be included in the amount in controversy ([at least $11,359,350 in alleged waiting time penalties and wage statement penalties]) x 25% = $2,839,837.50.

44. And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation. <u>Chavez v. Netflix, Inc.</u>, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery[.]"); <u>Smith v. CRST Van Expedited, Inc.</u>, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent[.]").

45. For all of the forgoing reasons, MHS and Courtyard allege that the amount placed in controversy by Plaintiff's Complaint is at least **$14,199,187.50** which is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action. The amount in controversy requirement for CAFA is therefore satisfied.

**C.     No CAFA Exceptions Apply**

46.     CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. Sections 1332(d)(3)-(5).  However, none of these exceptions is applicable here.  The party resisting removal has the burden of proving the existence of a CAFA exception. King v. Great Am. Chicken Corp., 903 F.3d 875, 878 (9th Cir. 2018).

47.     The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  See 28 U.S.C. § 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action was originally filed in California and, as noted above, Defendants are not citizens of California.  Thus, this exception does not apply.

48.     Similarly, 28 U.S.C. Section 1332(d)(4) contains an exception to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, this exception, too, only applies where all primary defendants, or at least one defendant whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, is a "citizen of the State in which the action was originally filed."  See 28 U.S.C. §§ 1332(d)(4)(A)(i)(II),1332(d)(4)(B).  Given that this action was originally filed in California, and that Defendants are not California citizens, this exception also does not apply.

49.     Finally, 28 U.S.C. Section 1332(d)(5) presents two additional exceptions for defendants who are government entities, or putative classes which number less than 100 in the aggregate.  See 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given that Defendants are not governmental entities, and that the proposed class numbers are alleged to be greater than 100 individuals, these exceptions also do not apply.

**IV.    TIMELINESS OF REMOVAL**

50.     As required by 28 U.S.C. Section 1446(b), this Notice of Removal is timely filed within thirty (30) days after service of the Complaint on October 10, 2022.  Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (thirty-day window to remove does not run until formal service is complete under state law).

## V. NOTICE TO PLAINTIFF AND STATE COURT

51. Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record, at James Hawkins, APLC, 9880 Research Drive, Suite 200, Irvine, California 92618. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of San Francisco, California.

52. In compliance with 28 U.S.C. Section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendants or filed by Defendants are attached hereto as Exhibits A through F.

WHEREFORE, having provided notice as is required by law, the above-entitled action should be removed from the Superior Court for the County of San Francisco to this Court.

Dated: November 9, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Hilary A. Habib*
GREG S. LABATE
HILARY A. HABIB
Attorneys For Defendants
MARRIOTT INTERNATIONAL, INC. *erroneously sued as* MARRIOTT INTERNATIONAL, MARRIOTT HOTEL SERVICES, INC., AND COURTYARD MANAGEMENT CORPORATION